EDOK Criminal Complaint (Revised 6/13)

# United States District Court

## EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　　*Plaintiff,*<br><br>v.<br><br>**ROBERT CHARLES MARSHALL,**<br><br>　　　　　　　*Defendant.* | **CRIMINAL COMPLAINT**<br><br>Case No.　24-MJ-35-JAR |

　　　I, Rebecca Davison, the undersigned complainant, state that the following is true to the best of my knowledge and belief.

　　　On or about November 15, 2023, in the Eastern District of Oklahoma, **ROBERT CHARLES MARSHALL**, committed the crime of **Felon in Possession of a Firearm and Ammunition**, in violation of Title 18, United States Code, Section(s) 922(g)(1), 924(a)(8).

　　　I further state that I am a special agent with the Bureau of Alcohol, Tobacco, Firearms, and Explosives, and that this complaint is based on the following facts:

　　　(See attached Affidavit of Rebecca Davison, which is attached hereto and made a part hereof by reference.)

　　　☒　　　Continued on the attached sheet.

*Rebecca Davison*
───────────────────────────
Rebecca Davison
Bureau of Alcohol, Tobacco, Firearms, and Explosives
Complainant

Sworn to on January 29, 2024.

───────────────────────────
Signature of Judicial Officer

JASON A. ROBERTSON
**UNITED STATES MAGISTRATE JUDGE**
Name and Title of Judicial Officer

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Rebecca Davison, being duly sworn, does depose and state the following:

### AGENT BACKGROUND AND INTRODUCTION

1. I am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF) within the meaning of 18 U.S.C. § 3051, and as such, am an officer of the United States who is authorized to investigate violations of the laws of the United States and to execute warrants issued under the authority of the United States. I have been employed by ATF since December 2020. In 2021, I completed the Criminal Investigator Training Program required by the ATF to be an ATF criminal investigator. I also completed the Special Agent Basic Training Academy required by ATF for all special agents employed by ATF. In connection with my official duties as an ATF Special Agent, I investigate criminal violations of federal firearms laws, federal explosives laws and federal narcotics laws. I have further worked alongside other experienced investigators in relation to firearms and narcotics investigations.

2. This affidavit is made for the limited purpose of establishing probable cause in support of a criminal complaint alleging that Robert Charles MARSHALL, hereafter referred to as MARSHALL, did possess firearms in violation of Title 18 U.S.C. § 922(g)(1).

3. I know MARSHALL is a convicted felon and therefore prohibited from the possession of firearms or ammunition pursuant to Title 18 U.S.C. § 922(g)(1). Specifically, MARSHALL is a federally convicted felon, Northern District of Oklahoma, Case 05-CR-105-001-HDC, for Conspiracy (count 1) and Possession and Use of a Firearm During a Drug Trafficking Crime (count 2). On September 1, 2006, MARSHALL received a prison sentence of 168 months comprised of 108 months for count 1 and 60 months for count 2. MARSHALL further received supervised release for a period of five (5) years for both counts, to be served concurrently.

**MARSHALL** violated the supervised release conditions and was sentenced to eight (8) months in the United States Bureau of Prisons on August 17, 2020, Eastern District of Oklahoma, Case CR-20-00009-001-RAW.

4. The statements made in this affidavit are based in part on: (a) my personal participation in this investigation; (b) information provided to me by other law enforcement officers; and (c) the training and experience of myself and other law enforcement agents and officers.

**FACTS SUPPORTING PROBABLE CAUSE**

5. On November 12, 2023, the Pittsburg County Sheriff's Office (PCSO) received a report from D.B., who resided at Robert MARSHALL's property, located at 3139 McNally Road, Eufaula, Oklahoma, which stated that Robert MARSHALL threatened to kill her after an altercation. D.B. stated that she was in the process of packing her belongs to move from MARSHALL's property when he came into the camper and pushed her against the wall. He placed his elbow on her throat and pushed her to the floor. MARSHALL pointed a black rifle in her face and stated he was going to kill her. She recalled that the rifle had red and green lights on it. MARSHALL instructed another individual who was present, D.W., to find her cell phone as MARSHALL held her to the floor with the rifle. MARSHALL told her that she was not going to leave alive and that he was not going back to prison. D.B. was able to flee when MARSHALL was distracted. He yelled at D.W. to catch her and not to let her leave the property. However, D.B. was able to drive away.

6. On November 13, 2023, DB contacted PCSO and provided additional information to investigators. She stated that MARSHALL kept a .45 caliber handgun by his bed and that he

received the rifle which he pointed at her the night before just a couple of weeks prior. She also stated that MARSHALL attempted to contact her and asked her not to file any charges on him.

7. On November 14, 2023, PCSO received a search warrant for MARSHALL's residence, in the Eastern District of Oklahoma, which included any vehicles, vessels, outbuildings, curtilage, and persons based off of MARSHALL's prohibited status as a convicted felon.

8. On November 15, 2023, PCSO executed the search warrant with the assistance of ATF SA Davison. Deputies knocked and announced their presence. Contact was made with MARSHALL's elderly father, E.M., through a window. He was instructed to open the front door but stated he was unable to because he was locked in his room. Deputies made entry through the front door which was unlocked. E.M. was located inside of his room that was locked from the outside. The room E.M. was located in was his bedroom. No other occupants were located. Adult protective services were requested to make arrangements for E.M. He stated MARSHALL left to the grocery store. Photographs were taken during the search warrant. Inside of the residence, next to MARSHALL's bed was a nightstand which contained a user manual for a Ruger SFAR rifle and prescription medication bottle in MARSHALL's name. On a work desk next to the bedroom area were driver licenses for MARSHALL and his father. On MARSHALL's bed was a Shooter's Bible book. MARSHALL's cell phone was also located inside of the residence by PCSO deputies.

9. During the execution of the search warrant, a large gun safe was located inside of a shed on the property. Deputies removed the padlock and discovered a large quantity of firearms. An empty cardboard box for a Ruger SFAR rifle that matched the user manual from MARSHALL's nightstand was inside of the safe. Furthermore, the Ruger SFAR .308win caliber rifle bearing serial number 563-48324 that matched the serial number on the gun box was in the safe. A Ruger SR1911 45acp semi-automatic handgun bearing serial number 673-18401 was

located inside of a black bag in the safe. Twenty (20) firearms and a large quantity of ammunition were also seized by law enforcement.

10. On November 16, 2023, PCSO attempted to locate MARSHALL at his residence to conduct a probable cause arrest. However, upon their arrival, MARSHALL fled on a four-wheeler. The four-wheeler was later located but MARSHALL could not be found.

11. On November 21, 2023, I conducted a telephonic interview with D.B. who was living out of state. D.B. stated she started living in a camper on MARSHALL's property during the summer of 2023. MARSHALL lived in the main residence with his father, E.M.  E.M. slept in a hospital bed in the living room, which was separate from the area where MARSHALL slept. MARSHALL verbally abused her and didn't allow her to wash her clothes. She stopped using the restroom inside the residence because she didn't feel safe going in there. Her camper didn't have a working restroom. She also didn't feel safe inside of the camper because the walls wouldn't stop anything, but felt it was better than being in the house. On Sunday, November 12, 2023, D.B. decided she would flee MARSHALL's property after his behavior became increasingly more erratic. She didn't have a key to the large gate at the top of the driveway, about a mile and half from the house, so she told D.W. that she needed to follow him out while MARSHALL slept. However, as she was packing her car, MARSHALL approached the camper from the residence with a rifle in his hand. He began to yell and get upset because he claimed she was stealing from him, even though everything she had belonged to her. MARSHALL pushed her against a wall in the camper and pressed his forearm/elbow against her neck. She didn't fight back because he was armed with a rifle. She then went to the ground, and he pointed the rifle at her face. She recalled seeing a red/green flashlight type device and a scope on the rifle. He began demanding her cell phone and told D.W. to find it as well. Prior to MARSHALL coming to the camper, D.B. placed

the phone on silent and hid it. MARSHALL stated she wasn't going to be able to make another phone call and that he wasn't going to prison again. She recalled him saying "this bitch has already threatened to call the cops on me once, had me running around hiding all my guns. She's not gonna make it out alive. So try to find the phone." MARSHALL pushed D.B. out of the trailer door and D.W. was looking in her car for her phone. He told MARSHALL he couldn't find it. At that point, D.B. was able to start her car and leave the residence. When she made it up the long driveway, she realized someone left the gate open and was able to escape. D.B. decided to leave the county and stop at a gas station because it was safer. A PCSO deputy met with her at the location and took an incident report. When asked why she thought MARSHALL wanted her phone, she stated so that she couldn't call law enforcement for help. She recalled him telling her, "I didn't go to prison for 17 years because I'm a nice guy. You don't know what I'm capable of."   She was confident he was going to kill her and put a bullet in her head. D.B. recalled MARSHALL possessing other firearms and that all his guns had scopes on them. She stated he kept a 45-caliber handgun on him all the time and on the nightstand by his bed. She described it as silver in color with wood grips. MARSHALL fired the handgun multiple times in the past. He shot the gun in the air whenever he wanted her to wake up to do chores and clean after his father, E.M. D.B. heard MARSHALL talking about being a felon and asked him about it. She knew he went to federal prison for firearms but didn't know any details. She began to become worried when she found out about his felony status due to the number of guns he possessed. MARSHALL had high anxiety from being in prison and had a hard time being around people. D.B. stated a male named "Nick,"- who MARSHALL knew from prison, would visit him. Nick visited on the weekend of her escape and left Sunday, November 12, 2023. Nick brought MARSHALL an assault style rifle about three (3) weeks prior, which would have been around October 28 – 29, 2023. The rifle was black and had holes on the

front end where one typically held it. DB overheard them talk about the red and green light and how it lit things up. She then identified the rifle as the one MARSHALL held to her face when he pushed her to the ground in the camper. MARSHALL and Nick killed a deer with the rifle Saturday night and MARSHALL got upset with her when she said he was poaching. They also killed a deer Saturday during the day and Saturday night into Sunday morning with the rifle. Nick drove a grey or silver truck, and always visited MARSHALL by himself. She said Nick came approximately three (3) times. D.B. stated whenever MARSHALL left the residence on occasion, E.M. told her that he wanted his other son M.M. to call law enforcement and Adult Protective Services to have MARSHALL arrested because he was tired of being treated poorly by MARSHALL. MARSHALL yelled at E.M. and cursed him out at times, including when E.M. would mess himself. MARSHALL would keep E.M. locked up inside of the house whenever he felt it was necessary, by using a leather strap on the outside of the door.

12. On November 25, 2023, in a follow up conversation with D.B., she stated MARSHALL told her directly that his former wife lied on the stand in court about the firearms previously seized by law enforcement and said the guns were not his. MARSHALL stated, "he owes her his life because if it wasn't for her, he would still be in the federal pen." She identified MARSHALL's ex-wife as K.R. on Facebook. D.B. recalled K.R. needed a place to stay and MARSHALL allowed her to stay there. Note: multiple firearms were seized from MARSHALL's residence in 2020 by PCSO and were returned after K.R. changed her statement.

13. On December 1, 2023, PCSO received a search warrant for MARSHALL's DNA, which was obtained from MARSHALL on the same date. On December 6, 2023, PCSO transferred the DNA buccal swabs to ATF custody.

14.     On December 8, 2023, I swabbed the Ruger SFAR and Ruger SR1911 and their respective magazines for DNA analysis. The swabs from the firearms and MARSHALL's buccal swabs were sent to DNA Labs International for analysis. On January 22, 2024, I received the results of the DNA analysis, and it was determined that MARSHALL could not be ruled out as a contributor to the DNA profiles extracted from samples obtained from the firearm swabs. Furthermore, the report stated the analysis provided very strong support that MARSHALL was a contributor to the DNA profile obtained from the samples.

15.     ATF Special Agent Lucas Keck, who is an Interstate NEXUS expert, examined three firearms seized on November 15, 2023, from MARSHALL. The firearms are described as: (1) ATF exhibit #1: Ruger, Model SR1911, .45ACP caliber, semi-automatic pistol, serial number 673-18401, (2) ATF exhibit #3: Ruger, Model SFAR, .308 Winchester/7.62x51mm caliber, semi-automatic rifle, serial number 563-48324, and (3) ATF exhibit #12: Browning, Model BAR II, .270 Weatherby Magnum caliber, semi-automatic rifle, serial number 107NX29406. SA Keck advised that the aforementioned firearms, being weapons, which will expel a projectile by the action of an explosive and incorporating the receiver of such a weapon, are a "firearm" as defined in 18 U.S.C. § 921(a)(3)(A) &(B).  Furthermore, the firearms were not manufactured in the State of Oklahoma.  Based on their location of manufacture, the firearms have moved in interstate and/or foreign commerce.

16.     Since this affidavit is being submitted for the limited purpose of enabling a judicial determination of whether probable cause exists to justify the issuance of a criminal complaint for MARSHALL, I have not included each and every fact known concerning this investigation to me and others involved in this matter.  I have set forth only the facts that I believe are essential to establish the necessary foundation for a criminal complaint.

17. Based on the above and the totality of the circumstances, I believe that probable cause exists to issue a criminal complaint against **ROBERT CHARLES MARSHALL** for violation of Title 18 U.S.C. § 922(g)(1), Felon in Possession of a Firearm.

*Rebecca Davison*
_____
**REBECCA DAVISON**
**Special Agent**
**Bureau of Alcohol, Tobacco, Firearms and Explosives**

Subscribed and sworn to this 29th day of January, 2024

_____
**UNITED STATES MAGISTRATE JUDGE**